# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

UNITED STATES OF AMERICA )
)
     v. )
)
GLENN ROBBINS, et al., )    Docket no. 2:22-cr-00012-GZS
)
          Defendants. )

## ORDER ON DEFENDANTS' MOTIONS

Before the Court are multiple Motions to Dismiss certain counts of the Indictment,[1] filed by Defendants Glenn Robbins and Western Sea, Inc. (ECF No. 103), Stephen Little (ECF No. 109), Neil Herrick (ECF No. 116), Ethan Chase (ECF No. 117), and Jason Parent (ECF No. 118). On January 4, 2023, the Court held oral argument on these motions. Additionally, on January 18, 2023, Defendants Samuel Olson and Sam's Seafood, LLC filed their Notice of Joinder in the Motions to Dismiss (ECF No. 211).[2] Having considered the Motions, related filings (ECF Nos. 123-24, 129, 132), and arguments presented, the Court DENIES the Motions for the reasons stated herein.

## I.    LEGAL STANDARD

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim P. 7(c)(1). "[T]o satisfy these requirements," an indictment "need only outline 'the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the

---

[1] The Superseding Indictment (ECF No. 140) was returned after these defendants filed their Motions to Dismiss the initial Indictment (ECF No. 1). The Court therefore construes their Motions, which seek to dismiss certain counts of the Indictment, as seeking to dismiss the same counts in the Superseding Indictment.

[2] Defendants Olson and Sam's Seafood, LLC join the Motions filed by Defendants Robbins & Western Sea, Inc. (ECF No. 103), Little (ECF No. 109), and Parent (ECF No. 118).

same offense.'" United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018) (quoting United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011)).  Consequently, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) (citation and internal quotation marks omitted); see Stepanets, 879 F.3d at 372 ("[A]n indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet.").

"[A]n indictment may be dismissed if a party can show that the indictment is facially defective in some way or subject to a defense that may be decided solely on issues of law." United States v. Dion, No. 2:19-CR-00176-GZS, 2020 WL 1450441, at *1 (D. Me. Mar. 25, 2020) (citation omitted).  In adjudicating a motion to dismiss, "courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)); see Stepanets, 879 F.3d at 372 ("[C]ourts must not inquire into the sufficiency of the evidence underlying the indictment.").  Defendants challenging the sufficiency of an indictment therefore bear a heavy burden.  See United States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010).

## II.      FACTUAL BACKGROUND & PROCEDURAL HISTORY

Defendant Robbins is the owner of Western Sea, Inc. (hereinafter, "Western Sea"), a corporation that owns a federally permitted Atlantic herring fishing vessel known as the F/V Western Sea.  (Sup. Indict. (ECF No. 140), PageID #s 385-86.)  He is also "one of the captains of

the F/V Western Sea." (Id., PageID # 386.) Defendants Chase, Herrick, Little, and Parent are crewmembers aboard the F/V Western Sea. (Id.) "During fishing years 2018 and 2019, Defendant Chase also served as a part-time captain of the F/V Western Sea." (Id.) "Between June 2016 and September 2019, the F/V Western Sea engaged in more than 80 fishing trips for Atlantic herring within herring management area 1A – the inshore Gulf of Maine region." (Id., PageID # 391.) Defendant Olson "is the owner of Defendant Sam's Seafood, LLC . . . a federally permitted Atlantic herring dealer." (Id., PageID # 386.)

In January 2022, Defendants Robbins, Chase, Herrick, Little, Parent, and Western Sea were charged in a 35-count Indictment (ECF No. 1).[3] In October 2022, they and several other individuals and entities, including Defendants Olson and Sam's Seafood, LLC, were charged in the now-pending, 59-count Superseding Indictment (ECF No. 140).[4] This Superseding Indictment charges, inter alia: all Defendants with conspiring "to commit offenses against the United States" in violation of 18 U.S.C. § 371 (Count One); Defendants Robbins and Western Sea with mail fraud in violation of 18 U.S.C. § 1341(Counts Two-18); and Defendants Robbins and Chase with falsification of records in violation of 18 U.S.C. § 1519 (Counts 19-35). (See Sup. Indict., PageID #s 385, 399, 401-02.)[5]

---

[3] The Government also charged Defendant Andrew Banow in the Indictment and the subsequent Superseding Indictment. Because Banow has not moved to dismiss the charges against him and has instead plead guilty to those charges, the Court does not discuss the Indictment or Superseding Indictment as they relate to him.

[4] Defendants Robbins, Chase, Herrick, Little, Parent, Western Sea, along with Olson and Sam's Seafood, LLC, are collectively referred to herein as "Defendants."

[5] The additional counts of the Superseding Indictment include 23 counts of wire fraud in violation of 18 U.S.C. § 1341 as to Defendants Robbins, Chase, and Western Sea (Counts 36-58) and a single count of conspiracy to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371 as to six individual defendants (Count 59). See Sup. Indict., PageID #s 402-11. None of the Motions (ECF Nos. 103, 109, 116-18) seek dismissal of these charges.

Count One of the Superseding Indictment alleges that, from June 2016 through September 2019, Defendants conspired "to defraud the United States by interfering with and obstructing, by deceitful and dishonest means, a lawful function of NOAA,[6] namely, the collection, evaluation, and analysis of biological, economic, and catch data."[7] (Id., PageID #s 390-91.) More specifically, Count One alleges that the F/V Western Sea, acting through Western Sea, Robbins, Chase, Herrick, Little, and Parent, "sold unreported catch [of Atlantic herring] to fish dealers" and "unpermitted buyers" on a number of occasions from 2016 through 2019.[8] (Id., PageID # 391.) To conceal such underreporting, Robbins and Chase, acting on Western Sea's behalf, generated false reports that were subsequently sent via mail "to NOAA's Regional Fisheries Management Office in Massachusetts" and via "interstate wire communications to the Maine Department of Resources." (Id., PageID #s 392-93.) Instead of paying Western Sea for the unreported Atlantic herring, Sam's Seafood, LLC (acting through Olson) and other dealers paid Chase, Herrick, Little, Parent, "and others by check." (Id., PageID # 393.) Sam's Seafood, LLC, acting through Olson, "paid more than $140,000 for [475,000 pounds of] unreported herring" it bought from the F/V Western Sea

---

[6] NOAA refers to the National Oceanic and Atmospheric Administration, which is a federal agency within the United States Department of Commerce. See Conservation L. Found. v. Evans, 360 F.3d 21, 23 n.1 (1st Cir. 2004).

[7] While the Superseding Indictment alleges only this one scheme to defraud, the initial Indictment delineated a second object of the conspiracy, namely, to "defraud NOAA and the State of Maine of fish and the fair market value thereof . . . by means of materially false and fraudulent pretenses and representations" and, to execute such scheme, by placing matter in the mail in violation of 18 U.S.C. § 1341. ECF No. 1, PageID # 5. The Court acknowledges that Robbins and Western Sea's Motion sought dismissal of Count One as duplicitous because it contained this additional allegation of a mail fraud conspiracy. See Robbins & WS Mot. (ECF No. 103), PageID # 226. However, in light of the revised Count One in the Superseding Indictment, the Court deems this argument moot.

[8] The Superseding Indictment lists five fish dealers, including Defendants Sam's Seafood, LLC, and New Moon Fisheries, Inc. With respect to unpermitted buyers, the Superseding Indictment lists the operators of three unidentified lobster boats. See Sup. Indict., PageID # 391.

between 2017 and 2019 and "failed to report any Atlantic herring purchased from the F/V Western Sea on the required dealer reports." (Id., PageID #s 391-92.)

With respect to Counts Two through 18, the Superseding Indictment alleges that, "[d]uring fishing years 2016 through 2019," captains and crewmembers of the F/V Western Sea "landed and sold substantially more Atlantic herring than was reported to NOAA" and, "to conceal . . . these unreported sales," Defendants Robbins and Western Sea falsified Fishing Vessel Trip Reports ("FVTRs") "and failed to report all sales of Atlantic herring." (Id., PageID #s 399-40.) According to the Superseding Indictment, this conduct constituted "a scheme and artifice to defraud NOAA and the State of Maine of fish and the fair market value thereof" and, "for the purpose of executing such scheme and artifice," Robbins and Western Sea mailed to NOAA false FVTRs. (Id., PageID # 400.) The property interest at issue in the alleged fraudulent scheme was NOAA and Maine's "legal right to seize and sell the Atlantic herring that was not reported on FVTRs." (Id.)

### III.    REGULATORY BACKGROUND

The Magnuson-Stevens Fishery Conservation and Management Act (the "MSA"), 16 U.S.C. §§ 1801-1884, "was passed by Congress in 1976 in 'response to depletion of the nation's fish stocks due to overfishing.'" Goethel v. U.S. Dep't of Com., 854 F.3d 106, 108 (1st Cir. 2017) (brackets omitted) (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 107 (1st Cir. 1997)). Under the MSA, the federal government exercises "sovereign rights and exclusive fishery management authority over all fish" within its "exclusive economic zone," 16 U.S.C. § 1811(a), which extends "3 to 200 nautical miles off the United States shoreline,"[9] Lovgren v. Locke, 701 F.3d 5, 13 (1st Cir. 2012). "[T]he jurisdiction and authority of" Maine, meanwhile, extends to those

---

[9] Under the MSA, "[t]he term 'fishery' means . . . one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics." 16 U.S.C. § 1802.

"pocket of waters that is adjacent to the State and totally enclosed by lines delimiting the territorial sea of the United States." See 16 U.S.C. § 1856(a)(2). Put simply, Maine "regulate[s] the first three miles seaward of [its] coastline and the federal government regulates beyond that limit to the outer boundary of the [exclusive economic] zone." Little Bay Lobster Co. v. Evans, 352 F.3d 462, 464 (1st Cir. 2003). The National Marine Fisheries Service ("NMFS"), a sub-agency of NOAA, is authorized under the MSA "to implement a comprehensive national fisheries management program in order 'to prevent overfishing, to rebuild overfished stocks, to insure conservation, to facilitate long-term protection of essential fish habitats, and to realize the full potential of the Nation's fishery resources.'" Gen. Category Scallop Fishermen v. Sec'y, U.S. Dep't of Com., 635 F.3d 106, 108-09 (3d Cir. 2011) (quoting 16 U.S.C. § 1801(a)(6)). "[E]ight Regional Fishery Management Councils [are] responsible for developing fishery management plans . . . in their regions." Gulf of Maine Fisherman's All. v. Daley, 292 F.3d 84, 86 (1st Cir. 2002).

In New England, the Atlantic herring fishery "is jointly managed in state and federal waters by the Atlantic States Marine Fisheries Commission and [NMFS] in conjunction with the New England Fishery Management Council."[10] These agencies establish annual catch limits on Atlantic herring in several areas, including the inshore gulf area of Maine known as "Management Area 1A."[11] "The . . . Atlantic herring fishery catch [is monitored] based on vessel and dealer reports, state data, and other available information." 86 Fed. Reg. 67,877 (Nov. 30, 2021). Beginning on the date that the Atlantic herring catch in Management Area 1A is projected to reach 92 percent of the area's sub-annual catch limit, NMFS implements in that area a 2,000-lb possession limit per

---

[10] Atlantic Herring Management Plan, NOAA Fisheries, https://www.fisheries.noaa.gov/management-plan/atlantic-herring-management-plan (Jan. 7, 2023).

[11] See Atlantic Herring Management Plan, supra note 10; see also 16 U.S.C. §§ 1852(h)(6), 1853(a)(15); Atlantic Herring, Atlantic States Marine Fisheries Commission, https://www.asmfc.org/species/atlantic-herring#management (Jan. 7, 2023).

trip.  See 50 CFR 648.201(a)(1)(i)(A).  In addition, Maine regularly implements spawning area closures or limits the amount of Atlantic herring a vessel can land per trip, day, or week.[12]

To legally fish for or otherwise possess Atlantic herring in the United States' exclusive economic zone or in Maine's waters, commercial vessels such as the F/V Western Sea and their operators must satisfy certain permitting requirements.[13]  The permits "reflect rights to fish for" Atlantic herring under certain conditions and restrictions.  See Gowen, Inc. v. F/V Quality One, 244 F.3d 64, 68 (1st Cir. 2001) (citing 50 C.F.R. § 648); see also Lovgren, 701 F.3d at 25 ("In a fishery where a permit is required to participate, it is unlawful to fish without one or in a manner inconsistent with a permit's terms or conditions.").  For instance, the United States requires "[t]he owner or operator of any vessel issued a limited access herring permit (i.e., Category A, B, or C) or a Category E Herring Permit [to] submit a catch report via VMS [Vessel Monitoring System] each day, regardless of how much herring is caught (including days when no herring is caught), unless exempted . . . ."  50 C.F.R. § 648.7(b)(3)(i)(A).  The owner or operator of a federally permitted vessel must also complete a FVTR at the end of each fishing trip.  50 C.F.R. § 648.7(b)(l)(i).[14]  In addition, Maine requires "[a]ll harvester vessels [to] report a pre-land hail weight three hours prior to landing by email to herring.dmr@maine.gov that includes the following information: harvester

---

[12] See generally Atlantic Herring Fishery Management, Department of Marine Resources, https://www. maine.gov/dmr/fisheries/commercial/fisheries-by-species/herring-atlantic-management (Jan. 7, 2023); Code Me. R. 13-188 Ch. 36, § 36.01(D)(3) (imposing restrictions, including daily and weekly landing limits, on harvesting Atlantic herring in Management Area 1A).

[13] See 50 C.F.R. §§ 648.4(a)(10)(i) ("[A]ny vessel of the United States must have been issued and have on board a valid Atlantic herring permit to fish, possess, or land Atlantic herring in or from the EEZ [exclusive economic zone]."), 648.4(a)(14) ("It is unlawful for any person to . . . [f]ish for, take, catch, harvest or land any species of fish regulated by this part in or from the EEZ, unless the vessel has a valid and appropriate permit . . . ."); Code Me. R. 13-188 Ch. 36, §§ 36.01(B)(2) ("All herring harvesters must possess a Herring Harvester Permit on their Commercial Pelagic and Anadromous Fishing License issued by the Department of Marine Resources.").

[14] Information to be included in each FVTR includes, inter alia, "[h]ail weight, in pounds . . ., by species, of all species, or parts of species . . ., landed or discarded."  50 C.F.R. § 648.7(b)(l)(i).

name, vessel name, date landed, gear type, total pounds, dealer name, and port landed." Code Me. R. 13-188 Ch. 36, § 36.01(B)(3); see Code Me. R. 13-188 Ch. 8, § 8.20(R) (requiring submission of daily catch reports "even if the herring caught during the week have not been landed"). Atlantic herring dealers are also subject to particular permitting and reporting requirements.[15]

Under the MSA and its promulgating regulations, it is unlawful for any person to, inter alia: (1) violate the MSA, "or any regulation, notice, or permit issued under the [MSA], or any other statute administered by NOAA"; (2) "[m]ake any false statement or provide any false information on, or in connection with, an application, declaration, record or report under [the MSA regulations]"; or (3) "[f]ail to comply in an accurate and timely fashion with the log report, reporting, record retention, inspection, or other requirements of [50 C.F.R.] § 648.7 [which details recordkeeping and reporting requirements], or submit or maintain false information in records and reports required to be kept or filed under § 648.7." 50 C.F.R. §§ 648.14(a)(l), (a)(5)-(a)(6); see 16 U.S.C. § 1857(1)(A) (making it unlawful for any person to violate any provision of the MSA or any regulation issued thereunder). It is a misdemeanor under the MSA to "[t]o knowingly and willfully submit to a Council, the Secretary, or the Governor of a State false information . . . regarding any matter that the Council, Secretary, or Governor is considering in the course of

---

[15] See 50 C.F.R. §§ 648.6(a)(1) ("All dealers of . . . Atlantic herring . . . must have been issued . . . a valid permit or permits for [such] species."), 648.7(a)(1) (requiring "[f]ederally permitted dealers, and any individual acting in the capacity of a dealer," to file weekly reports that include, inter alia, information detailing the amount of fish bought and the "vessel(s) from which fish are purchased or received"); Code Me. R. 13-188 Ch. 36, § 36.01(B)(1) ("All herring dealers shall obtain a herring dealers permit as part of the Wholesale Seafood License issued by the Department of Marine Resources."). Here, the Superseding Indictment adequately alleges that Defendants and the F/V Western Sea were federally permitted or otherwise subject to these various federal and state permitting requirements and the associated reporting requirements.

carrying out [the MSA]."  16 U.S.C. § 1857(1)(I).[16]  Accordingly, the MSA penalizes the filing of false reports by vessel operators or dealers as a misdemeanor.

Pursuant to the MSA, "any fish (or the fair market value thereof) taken . . . in connection with . . . any act prohibited by [the MSA or a regulation thereunder] . . . is subject to forfeiture to the United States."  16 U.S.C. § 1860(a).  "All or part of such vessel may, and all such fish (or the fair market value thereof) [must], be forfeited to the United States pursuant to a civil proceeding under" 16 U.S.C. § 1860(a).  Id.  Once "a judgment is entered for the United States" in such proceeding, the "Attorney General may seize any property or other interest declared forfeited to the United States, which has not already previously been seized pursuant to the" MSA.  Id., § 1860(c).  Similarly, under Maine law, "[a]ny marine organism that is taken . . . in violation of any provision of marine resources laws and all currency that is used in [such] violation . . . is contraband and is subject to forfeiture . . . ."[17]  12 M.R.S.A. § 6207.

---

[16] See 16 U.S.C. § 1859(b) (providing that an offense under § 1857(1)(I) "is punishable by a fine of not more than $100,000, or imprisonment for not more than 6 months, or both"); 18 U.S.C. § 3559(a) (stating that an offense is a misdemeanor, where not otherwise specified, if the maximum authorized term of imprisonment is six months or less).

[17] Under Maine law, "a marine patrol officer [who] seizes any organism or equipment" must "file a libel with a judge," subject to certain exceptions.  12 M.R.S.A, § 6207.  However, "[a]ny marine organism seized . . . may be sold prior to being libeled . . . by any marine patrol officer."  Id.  "If the judge finds that the claimant is not entitled to any item claimed, the judge [must] render judgment against the claimant for the State" and "declare the articles forfeited to the State."  Id.  Alternatively, "if the items have been sold . . ., the officer [must] turn the proceeds of the sale over . . . ."  Id.

## IV.     DISCUSSION

### A.     Conspiracy to Defraud the United States (Count One)

Defendants seek to dismiss Count One of the Superseding Indictment on the basis that it is precluded by the MSA and unduly vague.

As noted previously, Count One of the Superseding Indictment charges Defendants with conspiracy in violation of 18 U.S.C. § 371.  "[T]he general conspiracy statute, 18 U.S.C. § 371, criminalizes the conspiring of two or more people 'to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose.'"  United States v. Mubayyid, 658 F.3d 35, 56-57 (1st Cir. 2011) (quoting 18 U.S.C. § 371).  In charging Defendants under the defraud clause of section 371 with conspiring to interfere with and obstruct a lawful function of a United States agency (i.e., NOAA), the Government alleges a Klein conspiracy.  See United States v. Klein, 247 F.2d 908 (2d Cir. 1957).  A Klein conspiracy involves "obstructing the operation of any government agency by any 'deceit, craft or trickery, or at least by means that are dishonest.'"  United States v. Morosco, 822 F.3d 1, 6 (1st Cir. 2016) (quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924)).  To sufficiently charge a Klein conspiracy, the Government "must allege the three essential elements of section 371: 'an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement.'"  United States v. Barker Steel Co., 985 F.2d 1123, 1127-28 (1st Cir. 1993) (quoting United States v. Hurley, 957 F.2d 1, 4 (1st Cir. 1992)).  "The objective of the agreement is unlawful if it is for the purpose of impairing, obstructing or defeating the lawful function of any department of [g]overnment."  Id. at 1128 (cleaned up).  In alleging a Klein conspiracy, the Government is not required to establish that Defendants aimed to deprive the United States or Maine of property or money.  See id. at 1136 ("Although the Supreme Court has limited the scope of mail fraud, 18

U.S.C. § 1341, to the protection of property rights, that limitation is restricted to the mail fraud statute."); see also Morosco, 822 F.3d at 6 ("[O]ur caselaw rejects the idea that section 371 only bars conspiracies to defraud the government out of property or money.").

### 1.    Count One is Not Precluded by the MSA

The Court begins with Defendants' argument that Count One is precluded by the MSA.[18] Western Sea and Robbins take issue with the fact that, "[i]nstead of tracking the language of section 1857(1)(I) [of the MSA] and charging [D]efendants with knowingly and willfully submitting false information to NOAA regarding the vessel's catch," Count One "alleges that [D]efendants conspired to interfere with and obstruct, 'by deceitful and dishonest means, a lawful function of NOAA.'" (Robbins & WS Mot. (ECF No. 103), PageID #s 224-25.)  As such, Western Sea and Robbins theorize that the "indictment appears designed to disguise the conspiracy to commit a misdemeanor charge [i.e. a violation of the MSA], perhaps because the government is dissatisfied with the provision in 18 U.S.C. § 371 that conspiracy to commit a misdemeanor is penalized as a misdemeanor."  (Id., PageID # 213.)[19]  Western Sea and Robbins also emphasize that, because "Congress proscribed as a misdemeanor" the violation of the MSA, allowing Defendants to be charged with "a felony-conspiracy" would nullify the MSA and defeat congressional intent. (Robbins & WS Reply, PageID # 362.)  The other Defendants present similar arguments.[20]

---

[18] See Robbins & WS Mot. (ECF No. 103), PageID #s 223-26; Little Mot. (ECF No. 109), PageID # 241; Herrick Mot. (ECF No. 116), PageID #s 261-65; Parent Mot. (ECF No. 118), PageID #s 273-75; Olson & SS Mot. (ECF No. 211), PageID # 584.

[19] As Western Sea and Robbins correctly note in their submissions, § 371 provides, if the "object of the conspiracy" is "the commission of" an offense that "is a misdemeanor only, the punishment for such conspiracy [may] not exceed the maximum punishment provided for such misdemeanor."  See Robbins & WS Mot., PageID # 224 (quoting 18 U.S.C. § 371); Robbins & WS Reply (ECF No. 129), PageID # 362 (same).

[20] See, e.g., Little Mot., PageID # 241 ("[The indictment] attempts to cloak the violation of the [MSA] with felony status . . . [and] does not fairly inform the Defendant of the charge against which he must defend,

Western Sea and Robbins's argument that Count One is precluded by the MSA largely rests on the Sixth Circuit's decision in United States v. Minarik, 875 F.2d 1186 (6th Cir. 1989).[21] In Minarik, the government did not "charge a conspiracy to commit the statutory offense directly relevant to the alleged conduct—a conspiracy to violate § 7206(4) of the Internal Revenue Code." 875 F.2d at 1191.  After changing its prosecution theory several times, the government argued on appeal that, under the defraud prong of the conspiracy statute, "the defendants committed fraud by concealing assets from the Internal Revenue Service after receiving notice of assessment for taxes owed."  Id. at 1187.  The Sixth Circuit explained that "§ 371 creates one crime that may be committed in one of two alternate ways" and therefore "an individual whose alleged wrongful agreement is covered by the offense clause (because covered by a specific offense defined by Congress), as well as arguably by the broad defraud clause, cannot be convicted or punished for both."  Id. at 1193-94.  The "purpose" of the federal conspiracy statute, the Sixth Circuit noted, "was to reach conduct not covered elsewhere in the criminal code, a code which, unlike the present criminal code, had not elaborated specific fraud offenses."  Id. at 1194.

The Sixth Circuit has distinguished Minarik on a few occasions, however.  In United States v. Sturman, 951 F.2d 1466 (6th Cir. 1991), for example, the defendant argued that the conduct alleged in the indictment, which charged him under the defraud clause of section 371, amounted to violations of tax statutes and therefore should have been charged under the offense clause of section 371.  See id. at 1473.  The Sixth Circuit disagreed, finding that "the prosecution was entitled to

---

and must be dismissed."); Herrick Mot., PageID # 262 ("Ambiguity exists as to the precise nature of the offense charged in Count 1.  There is no citation in Count 1 to the penalty portion of the [MSA], so one is left to assume what the alleged violation is under 16 U.S.C. § 1857(1)."); Parent Mot., PageID #s 274-75 (making similar argument).

[21] See, e.g., Robbins & WS Reply, PageID #s 362-63.  Counsel for Robbins and Western Sea also emphasized the import of Minarik during oral argument before the Court.

indict the defendant[] under the defraud cause" because "[t]he broad nature of the conspiracy, and the associated violation of several statutes, distinguishe[d] [the] case from Minarik." Id. at 1473-74. The court explained that the "[e]vidence show[ed] that [the defendant] committed a wide variety of income tax violations and engaged in numerous acts to conceal income" and that the "large conspiracy involved many events which were intended to make the IRS impotent." Id. at 1473. As such, "[n]o provision of the Tax Code cover[ed] the totality and scope of the conspiracy," and the defendant's conspiracy "was not a conspiracy to violate specific provisions of the Tax Code but one to prevent the IRS from ever being able to enforce the Code against the defendants." Id. The Sixth Circuit therefore concluded that "[o]nly the defraud clause [could] adequately cover all the nuances of a conspiracy of the magnitude [that] case addresse[d]." Id. The court also noted that, unlike in Minarik, where the government constantly changed its prosecution theory (which meant that the defendant was never adequately informed of the charges against him), there were no changing theories in Sturman and therefore no confusion as to the charges. Id. at 1474.

The First Circuit has also found Minarik's holding to be "narrowly limited to the facts of that case, even by the circuit in which it was issued." Hurley, 957 F.2d at 3 (citing United States v. Mohney, 949 F.2d 899, 903 (6th Cir. 1991) ("Minarik . . . created a limited rule to remedy the particular concerns raised by the facts of that case."); Sturman, 951 F.2d at 1473-74; United States v. Bilzerian, 926 F.2d 1285, 1301 (2d Cir. 1991); United States v. Reynolds, 919 F.2d 435, 439 (7th Cir. 1990)). Consistent with these post-Minarik decisions, the First Circuit explained that "the primary problem in Minarik was not that the government charged defendants under the defraud clause, but that it repeatedly shifted its theory of the case and thus 'used the defraud clause in a way that created great confusion about the conduct claimed to be illegal.'" Hurley, 957 F.2d at 3 (quoting Minarik, 875 F.2d at 1196). Additionally, the First Circuit noted that "[i]n Minarik,

the conspiracy had a narrow object—concealment of assets upon which the IRS was empowered to levy—and arose from single event (the sale of a house)," and "[t]his object was explicitly proscribed by a particular statute, 26 U.S.C. § 7206(4)."  Id.  In contrast, where "the government alleges that defendants participated in a longstanding and wide-ranging scheme" to defraud the United States or an agency thereof, the First Circuit concluded that defendants may be charged under the defraud clause of section 371.  See id. at 3-4 (rejecting defendants' argument that indictment was invalid for failing to charge them under offense clause of section 371 with specific tax code violations).

Here, similar to Sturman and Hurley, the Government alleges a broad conspiracy that spans several years and involves numerous acts by Defendants to conceal their illegal conduct. Additionally, the Government has not repeatedly changed its prosecution theory; indeed, it alleged the Klein conspiracy in both the Indictment and Superseding Indictment.   Under these circumstances, the Government was entitled to determine that no provision of the MSA could cover "the totality and scope of" Defendants' conspiracy and that "[o]nly the defraud clause [could] adequately cover all the nuances of a conspiracy of the magnitude this case addresses."[22] Hurley, 957 F.2d at 4  (quoting Sturman, 951 F.2d at 1473); see also United States v. Cacho-Bonilla, 404 F.3d 84, 90 (1st Cir. 2005) ("[C]harging decisions belong to the prosecutor."); United States v. Brien, 617 F.2d 299, 310-11 (1st Cir. 1980) ("The government's election to prosecute appellants under the statute which, at the time, provided the more severe penalty, was an exercise of discretion that violated no rights of appellants."); United States v. Batchelder, 442 U.S. 114, 123-24 (1979) ("[W]hen an act violates more than one criminal statute, the [g]overnment may

---

[22] As the Government highlights: "Committing a violation of a fishing standard may be a misdemeanor under the Magnuson-Stevens Act.  But conspiring to impede NOAA in collecting, evaluating, and analyzing biological, economic, and catch data is a felony conspiracy to defraud the United States . . . ."  Opp. (ECF No. 123), PageID # 297.

prosecute under either so long as it does not discriminate against any class of defendants."). See Hurley, 957 F.2d at 4.  To the extent Defendants assert "lack of 'fair warning' that their [] conduct could be the basis for a criminal prosecution" under section 371, the Court finds such argument unpersuasive.   Hurley, 957 F.2d at 4.  "The statutory prohibition against defrauding the government adequately put [D]efendants on notice that a scheme designed to frustrate [NOAA's functioning] was prohibited."  Id.  "Unlike the situation in Minarik, [D]efendants' notice was not obfuscated by a confusing prosecution."  Id.

Additionally, the language of the MSA's criminal false statement provision, 16 U.S.C. § 1857(1)(I), does not demonstrate a congressional intent that 16 U.S.C. § 1857 preclude a criminal prosecution under 18 U.S.C. § 371 for a broad conspiracy (which happened to involve the filing and mailing of false reports) as that alleged in Count One.  16 U.S.C. § 1857(1)(I) does not mention or implicitly refer to § 371.  See 16 U.S.C. § 1857(1)(I); see also United States v. Tomeny, 144 F.3d 749, 750, 754 (11th Cir. 1998) (concluding that the statutory language of 16 U.S.C. § 1857(1)(I) "does not demonstrate Congress's intent to preempt § 1001" because it "does not even mention or implicitly refer to [18 U.S.C.] § 1001").  Moreover, as other courts have recognized, "the legislative history of the [MSA] does not reflect congressional intent to preempt prosecution for filing false FVTRs under other criminal statutes."  See, e.g., United States v. Winkler, No. 21-CR-217 (JMA), 2022 WL 17824064, at *3 (E.D.N.Y. Dec. 20, 2022).[23]  Finally, "the fact that Congress has passed a specific statute with lenient penalties does not indicate that Congress intended to preempt" or impliedly repeal "a more general but more severe statute that would apply

---

[23] The legislative history of 16 U.S.C. § 1857(1)(I) indicates that Congress implemented such provision "to address particular problems that had arisen with enforcement of the [MSA]."  Tomeny, 144 F.3d at 750, 754-55 (citing House Comm. on Merchant Marine and Fisheries, H. Rep. No. 99–165 (1985), reprinted in 1986 U.S.C.C.A.N. 6249, 6254-55).  That history does not suggest that Congress intended to preclude criminal prosecutions under 18 U.S.C. § 371 for conspiracies that may involve conduct also criminalized under 16 U.S.C. § 1857(1)(I).  See id.

to" conduct involving "the same offense." <u>Tomeny</u>, 144 F.3d at 753; <u>see</u> <u>United States v. Arif</u>, 897 F.3d 1, 8-9 (1st Cir. 2018) (concluding that cases falling within reach of Wheeler-Lea Amendment to Federal Trade Commission Act may be prosecuted as wire fraud cases); <u>Brien</u>, 617 F.2d at 309-310 & n.14 (holding that Commodities Futures Trading Act, which targeted specific type of fraud alleged by the government, did not impliedly repeal the general mail and wire fraud statutes, despite carrying a lesser maximum sentence). Because 16 U.S.C. § 1857(1)(I) and 18 U.S.C. § 371 "are capable of co-existence" and there is no "clearly expressed congressional intention" that conduct falling within the ambit of both statutes be prosecuted only under the former, this Court must "regard each as effective." <u>FCC v. NextWave Personal Commc'ns Inc.</u>, 537 U.S. 293, 304 (2003) (citation omitted).

For these reasons, the Court concludes that Court One is not precluded by the MSA.

### 2. Count One is Not Vague

The Court is mindful that the "defraud clause of section 371 has a special capacity for abuse because of the vagueness of the concept of interfering with a proper government function." <u>United States v. Goldberg</u>, 105 F.3d 770, 775 (1st Cir. 1997). Notwithstanding this concern, the Court finds that the Superseding Indictment meets the requirement of Federal Rule of Criminal Procedure 7(c)(1).

Section "371 proscribes two distinct types of conspiracies: (1) conspiracies to commit a specific offense against the United States, included elsewhere in the criminal code, and (2) conspiracies to defraud the United States" or one of its agencies. <u>Barker Steel</u>, 985 F.2d at 1131. Here, because Count One was "drawn under [the defraud] portion of the [conspiracy] statute [it] need refer to no statute other than § 371." <u>United States v. Vogt</u>, 910 F.2d 1184, 1200 (4th Cir.

1990).[24]   Count One appropriately tracks the defraud prong of section 371.  It alleges that, in violation of section 371, Defendants conspired "to defraud the United States by interfering with and obstructing, by deceitful and dishonest means, a lawful function of NOAA, namely, the collection, evaluation, and analysis of biological, economic, and catch data." (Sup. Indict., PageID # 391.)  It then sets forth specific acts underlying the alleged fraud, such as the following: the F/V Western Sea captains and crewmembers sold unreported Atlantic herring to fish dealers (including Sam's Seafood, LLC, acting through its owner, Olson) and unpermitted buyers several times from 2016 through 2019; Robbins and Chase generated false FVTRs on Western Sea's behalf; Western Sea, Robbins, and Chase mailed the false FVTRs to NOAA; instead of paying Western Sea for the unreported Atlantic herring, certain dealers (such as Sam's Seafood, LLC) paid several individual Defendants by check or cash; and "[i]n furtherance of the conspiracy, and to effect the objects of the conspiracy," Herrick, Parent, Little, and Chase each "received at least one payment representing the proceeds of unreported Atlantic herring."  (Id., PageID #s 391-95.)

Given these allegations, Count One unambiguously charges Defendants with (1) agreeing to (2) obstruct the operation of a government agency (NOAA) by dishonest means (inter alia, filing false reports that underreported their catches) and (3) performing overt acts in furtherance of that agreement (receiving payments of the underreported catch proceeds or sending the false reports to NOAA and Maine).[25]  In doing so, Count One outlines the elements of conspiracy under the defraud

---

[24] As the First Circuit has recognized, if the defraud clause "were interpreted to require commission of a specific offense, it would have the same meaning as the first clause thus rendering the second clause redundant." Barker Steel, 985 F.2d at 1131.

[25] Several Defendants challenge the sufficiency of Count One on the basis that it does not allege that they mailed any false reports or were otherwise involved in the alleged fraudulent scheme.  See Little Mot., PageID # 240; Herrick Mot., PageID # 263; Parent Mot., PageID #s 275-76; Olson & SS Mot., PageID # 584.  The Court reiterates that, although "[a]n indictment must allege each of the required elements of conspiracy, [] the government need not put forth specific evidence to survive a motion to dismiss." Ngige,

clause of section 371 "and the nature of the charge" such that Defendants "can prepare a defense and plead double jeopardy in any future prosecution for the same offense." Guerrier, 669 F.3d at 3; see also Stepanets, 879 F.3d at 372; Fed. R. Crim P. 7(c)(1). In addition, it specifies the location and time frame in which the conspiracy allegedly took place, as well as the specific dates on which false reports were purportedly mailed or e-mailed. (See Sup. Indict., PageID #s 390-99.) "Measured against the[] modest standards" for sufficiency of an indictment, the Court finds that Count One "easily passes muster." Stepanets, 879 F.3d at 373; see United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014) ("At the indictment stage, the government need not 'show,' but merely must allege, the required elements."). Accordingly, the Court concludes that Count One is not subject to dismissal due to vagueness.

### B.      Mail Fraud (Counts 2-18)

In addition to seeking dismissal of Count One, Defendants Western Sea and Robbins move to dismiss Counts Two through 18[26] on the basis that the Government has not alleged a property interest sufficient to support these charges for mail fraud.[27]

---

780 F.3d at 502. At this stage, the Government has sufficiently alleged 160 overt acts. See United States v. Berroa, 856 F.3d 141, 154 (1st Cir. 2017) ("[T]he government need not show that . . . the conspirators knew all of the details of the conspiracy or participated in every act in furtherance of the conspiracy." (citation omitted)); United States v. Ben Zvi, 242 F.3d 89, 98 (2d Cir. 2001) (finding defendants' "knowing receipt" of conspiratorial proceeds sufficient to satisfy overt act requirement); United States v. Canas, 595 F.2d 73, 79-80 (1st Cir. 1979) ("The overt act . . . may be that of only a single one of the conspirators and need not be itself a crime." (quoting Braverman v. United States, 317 U.S. 49, 53 (1942))).

[26] Robbins and Western Sea are collectively named in Counts 1-7, 9-10, and 15-17, while Western Sea is named alone in Counts 8, 11-14, and 18. See Sup. Indict., PageID #s 400-01. Thus, Western Sea moves to dismiss Counts 1-18, while Robbins moves to dismiss only Counts 1-7, 9-10, and 15-17. See Robbins & WS Mot., PageID # 212 & n.1.

[27] Because the Government alleges only a Klein conspiracy in Count One of the Superseding Indictment, it is not required to establish in Count One an aim to deprive the United States or Maine of property or money. See Barker Steel, 985 F.2d at 1127-28, 1136; Morosco, 822 F.3d at 6. As such, the Court considers Defendants' property-based arguments with respect to only the mail fraud charges against Robbins and Western Sea in Counts Two through 18.

"The crime of mail fraud includes three elements: '(1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate mail . . . communications in furtherance of that scheme.'" United States v. Hebshie, 549 F.3d 30, 35-36 (1st Cir. 2008) (quoting United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004)).  The mail fraud statute "reach[es] any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." Carpenter v. United States, 484 U.S. 19, 27 (1987).  Under the statute, "to defraud" means to "wrong[] one in his property rights by dishonest methods or schemes[] and usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching." Id. (cleaned up).  "It does not suffice . . . that the object of the fraud may become property in the recipient's hands," because "the thing obtained must be property in the hands of the victim." Cleveland v. United States, 531 U.S. 12, 15 (2000) (concluding that § 1341 does not "reach[] false statements made in an application for a state license" because state and municipal licenses are not property "in the hands of the official licensor").  Nor does it suffice that "the loss to the victim is only an incidental byproduct of the scheme." Kelly v. United States, 140 S. Ct. 1565, 1573 (2020).

Here, the Government asserts that the F/V Western Sea crew's "illegal harvest[ing]" of Atlantic herring triggered the United States' right to forfeiture[28] and that their landing of Atlantic herring in violation of Maine's landing limits triggered Maine's right to the same.[29]  This right to forfeiture, the Government maintains, constitutes a property interest under the mail fraud statute. Defendants Robbins and Western Sea disagree, asserting that neither the United States nor Maine

---

[28] See Sup. Indict., PageID # 400; Opp., PageID #s 289-90, 294; 16 U.S.C. § 1860(a) ("[A]ny fish (or the fair market value thereof) taken . . . in connection with . . . any act prohibited by [the MSA or a regulation thereunder] . . . is subject to forfeiture to the United States.").

[29] See Opp., PageID # 294; 12 M.R.S.A. § 6207 ("Any marine organism that is taken . . . in violation of any provision of marine resources laws . . . is contraband and is subject to forfeiture . . . .").

gains a property interest in the overharvested and/or underreported fish (or its revenue) until a court has ordered the forfeiture of that fish.  (See Robbins & WS Reply (ECF No. 129), PageID # 358.)  Instead, in their view, the United States and Maine possess only a regulatory interest over the fish.  (See Robbins & WS Mot., PageID #s 219-20.)  The Government responds that "judicial involvement" is required only to "ensure due process" in connection with the United States or Maine's possession of the fish or its proceeds.  (Opp. (ECF No. 123), PageID # 295.)

Courts have long recognized that states own wild animals within their boundaries in a "sovereign capacity for the common benefit of all of its people."  See Lacoste v. Dep't of Conservation of State of Louisiana, 263 U.S. 545, 549 (1924).  The federal government therefore owns the fish within its exclusive economic zone in its sovereign capacity, as does Maine with respect to those fish in its coastal waters.  In issuing Atlantic herring permits to certain individuals and vessels, the federal government and Maine respectively bestow upon those individuals and vessels the "rights to fish for" herring in accordance with their rules.  See Gowen, 244 F.3d at 68 (citing 50 C.F.R. § 648) ("[T]he 'vessel permits' . . . reflect rights to fish for certain species for a certain number of days each year.").[30]  Within this realm, a fisherman ordinarily obtains a property interest in Atlantic herring when such fish "are reduced to possession by skillful capture."  See Douglas v. Seacoast Prod., Inc., 431 U.S. 265, 283-84 (1977).  However, an individual who obtains property in connection with "the planning, implementing, or concealing of a crime" (i.e., "contraband") does not have an interest or other right in that property.  See Luis v. United States, 578 U.S. 5, 13 (2016).  As such, Defendants' conduct in violation of federal and state law – for which they are subject to criminal penalties – prevented them from gaining any property interest

---

[30] For instance, Atlantic herring vessels (and their operators and owners) in federal and Maine waters must comply with the previously noted permitting and reporting requirements.  See 50 C.F.R. § 648.4(a)(10)(i); Code Me. R. 13-188 Ch. 36, § 36.01(B).

in the fish.  See id.; see also Zitter v. Petruccelli, 744 F. App'x 90, 95 (3d Cir. 2018) (noting that individual who seized oysters in violation of administrative order never properly obtained a property interest in the oysters); Rizzo v. Connell, No. CIV. 10-4136, 2012 WL 32206, at *7 (D.N.J. Jan. 5, 2012) (concluding that plaintiff did not have a valid property interest in clams he harvested in violation of an administrative order closing the river).  The overharvested and underreported fish therefore remained the property of the United States and Maine, regardless of any forfeiture that may have been attributed to Defendants' conduct.

Separately, as the Government highlights in its Opposition, several courts have recognized that wildlife harvested in violation of a regulatory scheme are "not property of the possessors, but rather the states" or federal government from which the wildlife was taken.  See United States v. Bruce, 437 F. App'x 357, 368 (6th Cir. 2011) (concluding that "undersized mussels . . . taken from Tennessee and Alabama waters in violation of a regulatory scheme . . . were not property of the possessors, but rather the states," and therefore "the states [had] a property interest in the mussel shells"); United States v. Oceanpro Indus., Ltd., 674 F.3d 323, 331-32 (4th Cir. 2012) (finding that Maryland and Virginia, which authorized seizure and sale of illegally harvested striped bass, "had a proprietary interest in the illegally harvested striped bass" once the fish were caught); United States v. Bengis, 631 F.3d 33, 39 (2d Cir. 2011) ("[T]he moment a fisherman pulls an illegally harvested lobster out of the [South African] sea, a property right to seize that lobster is vested in the government of South Africa."); United States v. Butler, 694 F.3d 1177, 1183-84 (10th Cir. 2012) (holding that Kansas, where defendant had poached deer, suffered a property loss because the "deer were not tagged immediately or . . . at all during [the defendant's] guided hunts").  The Court sees no reason to hold otherwise here.  Had Defendants allegedly "not undertaken efforts to conceal their overharvesting, including . . . under-reporting the amounts of their catch," the fish

"caught [and landed] in excess of the legal limits would have been seized and sold by" the United States and Maine. <u>Bengis</u>, 631 F.3d at 40. As a result, Defendants' alleged conduct deprived the United States and Maine "of proceeds from the sale of the illegally harvested [fish], i.e., 'money to which [they were] entitled by law.'" <u>Id.</u> This "entitlement to the revenue from the [fish] that were taken illegally does constitute 'property.'" <u>Id.</u> As such, in depriving the United States and Maine of that revenue, Defendants committed "an offense against property." <u>Id.</u> Additionally, Defendants' conduct prevented the United States and Maine "from accurately managing [their Atlantic herring] population," which contributes to "overharvesting[,] . . . a cognizable injury and . . . a pecuniary loss" to the United States and Maine. <u>Butler</u>, 694 F.3d at 1184. For these reasons, the United States and Maine's interest in the illegally harvested, landed, and underreported herring "goes beyond a mere regulatory interest in administering the fishing activities in [their] waters." <u>Bengis</u>, 631 F.3d at 39. The Court therefore concludes that the Government has adequately alleged a property interest to support the mail fraud charges in Counts Two through 18.

## V.     CONCLUSION

For the reasons just stated, the Court finds no merit in any of the arguments presented for dismissal of the referenced counts of the Superseding Indictment, nor does the Court find any alternative basis for dismissing these counts as a matter of law. [31] Therefore, the Court DENIES Defendants Glenn Robbins and Western Sea, Inc.'s Amended Motion to Dismiss (ECF No. 103), Defendant Stephen Little's Motion to Dismiss (ECF No. 109), Defendant Neil Herrick's Motion to Dismiss (ECF No. 116), Defendant Ethan Chase's Motion to Dismiss (ECF No. 117), and

---

[31] Likewise, the Court finds no basis to dismiss the falsification of records charges pending against Defendant Chase. In his one-page motion, Chase joined, and adopted the arguments advanced in, the motions of various co-defendants. <u>See</u> ECF No. 117, PageID # 269. However, Chase specifically referenced the falsification of records charges (Counts 25, 28-31, and 35), which are not the subject of these other motions to dismiss. <u>See id.</u> Because Chase has not presented any support for the dismissal of the falsification of records charges, the Court finds no basis for dismissing those charges.

Defendant Jason Parent's Motion to Dismiss (ECF No. 118).  To the extent Defendants Samuel Olson and Sam's Seafood, LLC sought similar relief in their Notice of Joinder in the Motions to Dismiss (ECF No. 211), that is also DENIED.

Finally, the Court acknowledges the recent filing of Defendants Robbins and Western Sea's Motion to Dismiss Counts 1 Through 58 of the Superseding Indictment (ECF No. 213) (and Defendant Jason Parent's Notice of Partial Joinder in that Motion (ECF No. 217)) and Defendants Robbins and Western Sea's Motion to Dismiss the Original Indictment for Want of Prosecution (ECF No. 214).  The Court RESERVES RULING on those Motions until they have been fully briefed.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 26th day of January, 2023.

23